# EXHIBIT 1

LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong, Esq. (SBN 281819)
rvalentine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Telephone: (818) 347-3333
Facsimile: (818) 347-4118

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHIRLEY SODERBERG,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF LOS ANGELES, et al.<br><br>Defendants. | Case No.: 18-cv-03861-FMO-JPR<br><br>**DECLARATION OF WILLIAM HARMENING IN OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 2 TO EXCLUDE PLAINTIFF'S EXPERTS ROGER CLARK AND WILLIAM HARMENING FROM TESTIFYING AS TO IMPROPER MATTERS AND MATTERS BEYOND THEIR AREA OF EXPERTISE** |

AFFIDAVIT

1. My name is William Harmening, and I previously submitted a report of expert analysis and opinion in the above-captioned matter. I have also testified in a deposition related to this case. In the course of these activities I have provided a statement of qualification and curriculum vitae outlining my training and experience. I offer this affidavit in support of Plaintiff's answer to a *Daubert* motion that has been filed by the Defense.

2. In my 37 years of law enforcement experience I have received an extensive amount of investigative training, and further, have provided such training. I have been trained in such investigative methods as trajectory analysis, blood spatter analysis, latent fingerprints, timeline analysis, and ejection pattern analysis, among others. I testified to this training in my deposition related to this matter. Further, I acted as one of two lead instructors in a block of instruction on crime scene searching and analysis at the Lincoln Land Police Training Center. And finally, I have advanced my own knowledge of investigative methods during the 100+ cases I have participated in as a police practices and use of force expert. Addendum A provides a sampling of the various types of analyses I have completed. To date, none of these analyses have been challenged.

3. I have routinely been asked by Attorneys during depositions about whether I hold certifications in various types of investigative methods. I do not, and for a good reason. There are no such certifications in law enforcement. There is often a misunderstanding, even by the attorneys questioning me, that such certifications are real and necessary. The fact is these certifications are offered by private organizations and associations for a fee and some minimal experience. They are not required by any State, county, or municipality in order to conduct a criminal investigation. The vast majority of police departments in the U.S. have less than five

officers. These departments simply do not enjoy the luxury of a full-time detective or crime scene specialist. They are forced to conduct these investigative activities themselves. Proper training is critical. Certifications that offer an array of letters behind an officer's name in return for a fee are inconsequential. I made the decision many years prior to my retirement to discontinue my involvement in these organizations due to their lack of benefit. While some do disseminate information about various investigative methods and techniques, it is typically not peer-reviewed or based on sound science. I have always chosen instead to further my knowledge through academic peer-reviewed journal articles

4.      In spite of my training and knowledge in various types of field-based forensic analysis, I would point out that I completed no such analyses in this case. The only physical evidence I address and rely upon in my report—location of empty casings, shot trajectories, location of Soderberg's wounds—is evidence collected and analyzed by the LAPD and the Medical Examiner's Office. I consider their work in this matter, as it relates to the evidence, accurate, and thus I have adopted their investigative conclusions. There was no specific expertise required on my part to address the physical evidence, only a knowledge that exceeds that of a lay jury to comprehend their work.

5.      In my report, I have provided discussion and opinion in three distinct areas; 1) crisis intervention, 2) the use of S.W.A.T., and 3) the use of a helicopter-based sniper platform.

6.      With regard to crisis intervention, I would point out that I am a former crisis intervention team ("C.I.T.") instructor in the State of Illinois, one of the very first. I am a former police academy instructor at the Lincoln Land Police Training Center in Springfield, IL., where I provided all behavioral science instruction to police cadets from across the state. I am a former Illinois State

licensed counselor. And I have been a professor at various universities for over a decade. From 2014 until my recent retirement, I was the program coordinator and lead instructor in the undergraduate forensic psychology program at Washington University in St. Louis, one of the Nation's top research institutions. The courses I designed and taught included a course in crisis intervention. My academic writings include two widely used and peer-reviewed textbooks; one titled "Forensic Psychology" and published by Pearson Publishers, and the other titled "Crisis Intervention" and published by Prentice Hall. As a uniformed police officer, I served as the Department's designated mental health officer, and have personally conducted many crisis negotiations.

7.     With regard to the use of S.W.A.T., while I have never been a S.W.A.T. officer, I have advanced my knowledge of such tactics during 37 years of law enforcement experience. Additionally, I have written significantly on an academic level about S.W.A.T. tactics using peer-reviewed research. In the textbook identified above and titled "Crisis Intervention," I have included chapters on crisis communication, crisis negotiation, use of force, and the tactical response to cases involving hostages and barricaded subjects. Similar chapters are included in the textbook identified above and titled "Forensic Psychology." In my report I have also connected my knowledge of tactical policing and crisis intervention by discussing the impact of using S.W.A.T. tactics against a mentally ill individual, and the near impossibility of de-escalation in such cases where these tactics are used.

8.     With regard to the use of the helicopter-based sniper platform, I would first point out that this case represents the first time the LAPD had ever used this platform, and that after having it available for deployment for as long as 13 years. In my report I offer no opinion on the specific

tactics used by the helicopter-based officers. But the obvious question is, what tactics even exist? The helicopter flies into position for a shot and the sniper fires. The expertise required to evaluate the use of the helicopter is the same as for a ground-based officer. The rules of engagement are exactly the same. Furthermore, I would argue that there really is no such thing as an expert is helicopter-based sniper tactics given that only three known departments in the U.S. have ever used this platform a total of three times. Again, this was the first time it was used by the LAPD. Finally, I have argued in my report that the use of the helicopter was predicated on a false premise. The LAPD have argued that it was necessary because Soderberg had a tactically superior and elevated position, and that it would have been too dangerous to engage him from a ground position. These reasons are nothing short of absurdity. By the time the helicopter arrived on-scene, Soderberg was fully contained inside a house that was completely surrounded. He NEVER had a tactically superior or elevated position. And engaging him from a ground position was exactly what they did. He had no possibility of escape.

9. In spite of my training and knowledge, it is important to point out that at the end of the day this is not a case about S.W.A.T. tactics, or even helicopter-based sniper tactics. The Defense may argue that because I have never been a S.W.A.T. officer or helicopter-based sniper, I am not qualified to opine on these issues. But I am not opining on their tactics, only on the use of deadly force against Anthony Soderberg. Regardless if an officer fires from a helicopter or while dressed in the tactical garb of an LAPD S.W.A.T. officer, the Constitutional, training, and policy standards governing the use of deadly force are exactly the same. Anthony Soderberg was shot as many as twelve times while he was outside the house with his hands clearly visible. Contrary to the statements of nearly every S.W.A.T. officer involved, he was unarmed and his hands were and

empty, something even the LAPD has admitted. The type of officers who fired, and the platforms from which they fired, are inconsequential. The issue is that they fired at all.

10. There are two types of expertise demonstrated in my report. First is a knowledge and expertise in the area of crisis intervention, especially as it pertains to mental illness. And second, is a knowledge and expertise in the use of force, especially deadly force. In the area of crisis intervention, I am generally considered one of the Nation's top experts. And on the subject of deadly force, I have participated in over 100 cases, including some of the most highly profiled cases in the U.S., including the case of Michael Brown in Ferguson MO, Dontre Hamilton in Milwaukee, and Cedric Chatman in Chicago; all cases that led to rioting and civil unrest.

_____
William M. Harmening
01/30/2020

ADDENDUM A

INVESTIGATIVE PORTFOLIO
William Harmening

      Following is a sampling of investigative analyses I have completed in the course of providing expert witness services in the areas of police practices and use of force. None of these analyses have been challenged.





In the matter of Michael Brown in Ferguson MO I completed an extensive analysis of the physical evidence. The above charts, two of many, include trajectory, blood spatter, and distance analyses. I was able to disprove the officer's account and show that Brown actually stopped advancing toward the officer prior to being shot.

7





In the matter of John Deming Jr. in Pleasanton CA I was able to disprove the officer's account by completing a complex timeline analysis that required syncing multiple sources of audio and video data. I was able to prove that the officer essentially staged the scene prior to the other officer arriving. Additionally, by completing a trajectory analysis using the Medical Examiner's report, I was able to determine the victim's body position at the time of the shooting.





In the matter of Tommy Le in Seattle WA, I completed an ejection pattern analysis, as well as a trajectory analysis. This analysis required that I take the location of the empty casings, as determined by the police department, and then based on ejection pattern data, as well as bullet defects in the house, I was able to show, based on the Medical Examiner's description of the wounds, exactly where the victim was location when he was shot by the officer. I was also able to show the location of an officer who fired a Taser based on the Taser evidence at the scene

9





In the matter of Rafael Cruz in Bakersfield CA, I completed a trajectory analysis based on the locations of the empty casings (60 casings). As determined by detectives. I was able to combine this information with the Medical Examiner's report to prove that the victim was actually on the ground when he received numerous shots, including a fatal shot to the head. This was contrary to the officer's account that the victim was standing upright and pointing an object.

10



A partial trajectory and wound analysis I completed in the matter of Michael Dial in White County, Tennessee. I was able to prove, using the Medical Examiner's report and dash cam footage, which of two officers fired the fatal shot.



In the matter of Jose Juarez in Azusa CA, I was able to determine the officer's location in relation to the victim based on the empty casings, a spent bullet, and a wound to the victim's hand.

11



In the matter of Crystalline Barnes in Jackson MS, I was able to determine the locations of two officers when they fired their weapons. This was done by analyzing the locations of the empty casings, as well as the bullet defects in the vehicle.



In the matter of Nicholas Thomas in Smyrna GA, I was able to use the locations of the empty casings, the video data, and the trajectories of the shots through the vehicle's glass to find the location of the officer when he fired. I was able to prove that the officer was not in front of the vehicle at the time of the shooting (case is currently under appeal after the Court awarded qualified annuity).

12





In the matter of Cary Ball Jr. I was able to take the triangulated measurements of the empty casings and body (they did no diagram) and reconstruct the scene. I not only showed the locations of the casings in relation to the body but based on ejection pattern data was able to then show the muzzle location of each shot. I was able to show the movement of the two officers as they approached Ball Jr., and to prove that most of the shots were fired at a distance of five feet or less while Ball Jr. was on the ground.